**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Anthony LaFauci

    v.                                                    Civil No. 09-cv-454-PB

William Wrenn, Commissioner,
New Hampshire State Prison, et al.[1]

**REPORT AND RECOMMENDATION**

Anthony LaFauci has filed a complaint (document no. 1) pursuant to 42 U.S.C. § 1983 alleging that defendants have violated his constitutional rights.  The matter is before me for preliminary review to determine whether or not the complaint contains any claims upon which relief might be granted.  See 28 U.S.C. § 1915A; United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2) (authorizing the Magistrate Judge to conduct preliminary review of cases filed by pro se prisoners).

---

[1]In addition to Wrenn, LaFauci has named the following employees of the New Hampshire Department of Corrections as defendants to this action:  New Hampshire State Prison Warden Richard M. Gerry, Minimum Security Unit ("MSU") Warden Jane Coplan, MSU Unit Manager Angela Greenwood, Lt. Paul Bell, Lt. John Morin, Corrections Officer ("CO") Rob Bashaw, CO Brian Burrows, CO Erik Jorgesen, Cpl. Glenn Daniels, Sgt. Santo Firillo, CO Britton, and a John Doe officer.

## Standard of Review

Under this Court's local rules, when an incarcerated person commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon which relief could be granted, the Court must consider whether the complaint, construed liberally, Erickson, 551 U.S. at 94, "contain[s] sufficient factual matter, accepted as true, to

2

'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949
(2009) (citation omitted).  "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged."  Id.  Inferences reasonably drawn from
the plaintiff's factual allegations must be accepted as true, but
the Court is not bound to credit legal conclusions, labels, or
naked assertions, "devoid of 'further factual enhancement.'"  Id.
(citation omitted).  Determining if a complaint sufficiently
states such a claim for relief is a "context-specific task that
requires the reviewing court to draw on its judicial experience
and common sense."  Id. at 1950 (citation omitted).

Background

Anthony LaFauci was, until recently, a New Hampshire State
Prison ("NHSP") inmate.  In July 2007, LaFauci was housed in a
cell with seven other inmates.  On July 28, 2007, Corrections
Officer ("CO") Rob Bashaw entered LaFauci's cell, instructed the
inmates to remove their clothing, and told them the cell was
going to be searched.  LaFauci was strip-searched and placed in
another area of the building while Bashaw searched the cell and
its contents, including LaFauci's personal paperwork and

property.  After the search was completed, Bashaw removed two large garbage bags of inmate property from the cell.

LaFauci returned to the cell to find that all of his personal property had been dumped out of its original containers in a large pile on his bunk, which was also left in disarray. LaFauci noticed that a number of his approved property items had been removed from the cell during the search.  LaFauci left his cell and went into the hallway to complain to Bashaw about the taking of his personal property.  Bashaw placed LaFauci in handcuffs.  Bashaw then told other officers present that he was going to place LaFauci in the North Unit "tank" but that he was reluctant to escort him due to lawsuits LaFauci had previously filed.  Bashaw then took LaFauci to the "tank," accompanied at least part of the way by CO Britton and a John Doe officer.

Once in the "tank," LaFauci was told to face the wall, remove all of his clothing, and hand his clothing to Britton so that it could be searched.  While LaFauci was still handcuffed, however, Britton hit LaFauci, causing him to slam into the wall. LaFauci's face hit the wall hard enough to cause a black eye, as well as soreness to LaFauci's face and mouth.  Britton and the John Doe officer then grabbed LaFauci's arms and forced him to

4

walk to the Special Housing Unit ("SHU"), where he remained for seven days.

After seven days, LaFauci was returned to his previous housing unit to find his personal property still missing. LaFauci filed a complaint with his Unit Lieutenant and Unit Manager Angela Greenwood, listing missing property worth $128.

On August 21, 2007, LaFauci sent a grievance to NHSP Warden Richard Gerry concerning the July 28 incident.  LaFauci has not included a copy of the grievance form with his complaint, and it is not clear from the allegations in the complaint what aspects of the incident he raised in this grievance.  Gerry denied the grievance and advised LaFauci he would be reclassified to C-2 status.  Prior to LaFauci receiving Gerry's response, Bashaw confronted LaFauci about filing a complaint against him.

On November 19, 2007, LaFauci was returned to the Minimum Security Unit ("MSU") at the NHSP.  LaFauci states that while there, he had no access to a law library or to any legal research materials.

On February 14, 2008, LaFauci was in his cell at MSU.  At 1:35 a.m., all of the MSU inmates were awakened for a cell search.  Approximately 30 - 40 inmates were strip-searched and moved to the kitchen.  Cpl. Glenn Daniels came into the kitchen

5

and yelled, "Why are you looking at me?" at another inmate, twice.  This drew the attention of all of the inmates present. Daniels then approached LaFauci and told him to put his head down on the table, and not to watch or look at Daniels.  LaFauci did as Daniels instructed.

Daniels then left the kitchen and returned a short time later.  When he returned to the kitchen, he told LaFauci that Bashaw had said that LaFauci called Daniels a "punk."  LaFauci denied having done so.  Daniels told LaFauci to stand up and put his hands on top of his head.  LaFauci again complied with Daniels's instructions.  Daniels told LaFauci to leave the kitchen and go into the hallway so that he could talk one-on-one with Lafauci.

As LaFauci was approaching the doorway to the hallway, Daniels struck him on his right side, and continued to hit him and push him out of the door.  LaFauci was also hit by CO Brian Burrows in the kitchen doorway.  LaFauci was then pushed into the wall in the dayroom.  CO Erik Jorgesen grabbed LaFauci in the dayroom and hit LaFauci, stating, "You're resisting" while hitting him.  LaFauci fell to the floor.  Jorgesen, Bashaw, Burrows, Daniels, and Sgt. Santo Firillo proceeded to hit and

kick LaFauci while holding him down on the floor.  LaFauci was
handcuffed during this incident.

Cpl. Marze came down the hall and, seeing the officers on
top of LaFauci, ordered them to get off of LaFauci as LaFauci
couldn't breathe.  LaFauci was then picked up off of the floor.
Lafauci was in pain and complained of chest pain and was brought
to the medical unit.  A nurse at the medical unit was told that
LaFauci was complaining of chest pain, but did not provide him
with any treatment for that pain, giving him only a bandage for a
cut on his hand.

LaFauci was returned to MSU.  LaFauci straightened up his
property that had been disrupted during the search and went to
bed.  The following afternoon, LaFauci asked to use the MSU
typewriter so that he could prepare a complaint regarding the
incident to provide to his Unit Manager.  LaFauci indicates in
his complaint that he advised his Unit Manager he was filing a
grievance, and then returned the typewriter.  It is not clear
from the complaint whether or not LaFauci actually prepared and
submitted this grievance.

At 3:00 p.m., LaFauci asked to go to the medical unit, where
he was held for several hours.  LaFauci was then taken to SHU.
LaFauci couldn't lie down or sleep due to pain from injuries he

sustained in the assault, specifically, bruising to his face, chest, and back.  On February 15, 2008, LaFauci was transported to Manchester Medical Emergency Unit where he stayed for approximately seven hours before being returned to the prison.

<u>Discussion</u>

I.   <u>42 U.S.C. § 1983</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  <u>See</u> 42 U.S.C. § 1983[2]; <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 829 (1985); <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  LaFauci alleges that his

_____

[2]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

federal constitutional rights have been violated by state actors. LaFauci's claims, therefore, arise under § 1983.

II.  Excessive Force

LaFauci alleges that COs Bashaw, Britton, and Doe used excessive force against him on July 28, 2007, and that COs Daniels, Jorgesen, Burrows, Bashaw, and Firillo used excessive force against him on February 14, 2008, which on both occasions, he asserts, violated the Eighth Amendment prohibition of cruel and unusual punishment.   The "'core judicial inquiry'" in evaluating an excessive force claim under the Eighth Amendment is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S. Ct. 1175, 1178 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 4 (1992)). In addition to whether or not malice motivated the use of force, the court should look to the following three factors in determining whether a plaintiff has stated a claim for unconstitutionally excessive force:  (1) the need for the use of force, (2) the relationship between the need and the amount of force that was used, and (3) the extent of any injury inflicted. See Hudson v. McMillian, 503 U.S. at 7.  A plaintiff need not show significant injury to establish a claim for excessive force,

9

as "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." Wilkins, 130 S. Ct. at 1178-79 (quoting Hudson v. McMillian, 503 U.S. at 4, 10 for proposition that minor nature of injuries does not provide basis for dismissal of excessive force claim).

On both of the occasions that LaFauci alleges he was subjected to excessive force, LaFauci states that he was relatively physically helpless by virtue of being outnumbered, unclothed, and handcuffed, and that he was not behaving in a manner that required or provoked the use of force against him. LaFauci describes the force he was subjected to as sufficient to cause a black eye and soreness in July 2007, when his face was slammed into a wall, and bruising, swelling, and pain that prevented him from lying down or sleeping in February 2008, when he was repeatedly hit and kicked by five officers.  LaFauci alleges that during the assaults alleged, he was not taking any physical action against any officer and neither threatened nor effected any physical threat to any officer.

I find that LaFauci has stated sufficient facts to allege that he was subjected to excessive force by Britton, Burrows, and Doe on July 28, 2007, and that he was again subjected to excessive force by Bashaw, Burrows, Jorgesen, Daniels, and

10

Firillo on February 14, 2008, to allow these claims to proceed against these defendants.  In my Order issued simultaneously with this Report and Recommendation (hereinafter the "Simultaneous Order"), I will direct service of excessive force claims against Britton, Burrows, Bashaw, Jorgesen, Daniels, and Firillo.[3]

III. <u>State Law Tort Claim</u>

LaFauci, relying on the facts alleged to support his excessive force claims, asserts a state law tort claim of assault

---

[3]LaFauci has not as yet provided the name of the John Doe defendant to the Court.  Although I authorize these claims to proceed against the John Doe officer, LaFauci must provide the Court with his full name before she can be served.  Upon service of this action on the other defendants, LaFauci can serve them with interrogatories to obtain John Doe's full name pursuant to Fed. R. Civ. P. 33(a) which states in pertinent part:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by an officer or agent, who shall furnish such information as is available to the party.

Once John Doe's full name is obtained, LaFauci may file a motion to amend his complaint to add John Doe as a defendant to the excessive force and state law assault claims and the Clerk's office will effect service upon the John Doe officer, as directed in my Order directing service issued simultaneously with this Report and Recommendation.

against defendants Britton, Burrows, Bashaw, Jorgesen, Daniels, and Firillo.  See Silva v. Warden, 150 N.H. 372, 374, 839 A.2d 4, 6 (2003) (recognizing and discussing intentional tort where an inmate alleges harm caused by corrections officer who assaulted him).  Where, as here, there is no diversity of the parties, this Court can obtain jurisdiction over plaintiffs' state law claims only by exercising its supplemental or pendant jurisdiction over the state claims where the claim is part of the same case or controversy as a federal claim properly before this Court.  See 28 U.S.C. § 1367(a) (allowing court to exercise supplemental jurisdiction over state law claims that are "so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy"); see also United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Plaintiff's state law assault claims arise out of the same facts and circumstances asserted in his federal excessive force claims.  Accordingly, I find that it is appropriate to exercise this Court's supplemental jurisdiction, see 28 U.S.C. § 1367(a), and LaFauci's state claims may proceed against Britton, Burrows, Bashaw, Jorgesen, Daniels, and Firillo.[4]

---

[4]Again, the John Doe officer will be served with this claim upon provision of his full name to the Court.

12

IV.  <u>Retaliation Claim</u>

LaFauci asserts that the assault against him on February 14, 2008, was motivated by an intent to retaliate against him for complaining about officer conduct regarding his property and for prior lawsuits LaFauci has filed against prison employees.  In order to state a claim for retaliation, an inmate must allege: (1) the conduct which led to the alleged retaliation was protected by the First Amendment, (2) some adverse action taken by prison officials, and (3) a causal link between the exercise of the inmate's First Amendment rights and the adverse action.  <u>See</u> <u>Price v. Wall</u>, 428 F. Supp. 2d 52, 55 (D.R.I. 2006); <u>see</u> <u>also</u> <u>McDonald v. Hall</u>, 610 F.2d 16, 18 (1st Cir. 1979) (discussing pleading requirements for retaliation claims by prisoners); <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003) ("[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."); <u>LaFauci v. N.H. Dep't of Corr.</u>, No. Civ. 99-597-PB, 2005 WL 419691, at *7 (D.N.H. Feb. 23, 2004) (Unpublished Order); <u>Oropallo v. Parrish</u>, No. 93-1953, 1994 WL 168519, at *3 (D.N.H. May 5, 1994) (citing <u>Ferranti v. Moran</u>, 618 F.2d 888, 892 n.4 (1st Cir. 1980) ("[A]ctions otherwise

13

supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms.") (internal citation omitted)). I consider each of these elements of a retaliation claim in turn. For the purposes of analysis, I will assume, without deciding, that the first two elements of a retaliation claim could be satisfied by evidence of an assault on LaFauci in February 2008, following LaFauci's July 28, 2007, complaint to Bashaw about his missing property and his August 2007 grievances to prison officials about the missing property. I must next consider whether LaFauci has alleged sufficient facts to show a causal link between the exercise of rights and the adverse action. Here, LaFauci's allegations, even construed generously, fall short. He has alleged that Bashaw was aware that LaFauci had previously filed a lawsuit, and was therefore reluctant to escort him to the "tank" in July 2007. LaFauci has further alleged that Bashaw "confronted" him in November 2007 about filing a grievance in that Bashaw told LaFauci that he was aware that such a grievance had been filed about the July 28, 2007 incident. LaFauci has failed to allege any facts, however, that demonstrate a nexus or causal link between the February 2008 assault against him and grievances he filed three months prior. LaFauci's assertions that one or more officers were aware that he

had filed grievances or lawsuits in the past, most recently several months before the assault, without more, do not suffice to allow this Court to reasonably infer that the February 2008 assault was motivated by a desire to retaliate against LaFauci for those complaints.  I therefore recommend dismissal of LaFauci's retaliation claim.

V.   Inadequate Medical Care

LaFauci alleges that he was not provided with adequate medical care in response to the February 14, 2008, incident, in violation of the Eighth Amendment.  "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 33 (1993); see Giroux v. Somerset County, 178 F.3d 28, 31 (1st Cir. 1999).  The Supreme Court has adopted a two-part test for reviewing claims under the Eighth Amendment's cruel and unusual punishment clause.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Helling, 509 U.S. at 25; Hudson v. McMillian, 503 U.S. at 7.  To assert a viable cause of action for inadequate medical care, a prisoner must first state facts sufficient to allege that he has not been provided with adequate care for a serious medical need.  See Farmer, 511 U.S. at 834;

Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Estelle, 429 U.S. at
106.

"[A]dequate medical care" is treatment by qualified medical
personnel who provide services that are of a quality acceptable
when measured by prudent professional standards in the community,
tailored to an inmate's particular medical needs, and that are
based on medical considerations.  See United States v.
DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987).  This does not
mean that an inmate is entitled to the care of his or her choice,
only that the care must meet minimal standards of adequacy.  See
Feeney v. Corr. Med. Servs., 464 F.3d 158, 162 (1st Cir. 2006)
("When a plaintiff's allegations simply reflect a disagreement on
the appropriate course of treatment, such a dispute with an
exercise of professional judgment may present a colorable claim
of negligence, but it falls short of alleging a constitutional
violation.") (internal citations omitted).  A serious medical
need is one that involves a substantial risk of serious harm if
it is not adequately treated.  See Barrett v. Coplan, 292 F.
Supp. 2d 281, 285 (D.N.H. 2003); Kosilek v. Maloney, 221 F. Supp.
2d 156, 180 (D. Mass. 2002) (citing Farmer, 511 U.S. at 835-47);
see also Gaudreault v. Municipality of Salem, 923 F.2d 203, 208

16

(1st Cir. 1990) (defining a serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") (internal citations omitted).

To satisfy the second prong of an Eighth Amendment claim, a prisoner must allege that prison officials "have a 'sufficiently culpable state of mind.'  In prison conditions cases, that state of mind is one of 'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834 (internal citations omitted). Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).  Constraints inherent in a prison setting may affect the choice of care provided and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state. Wilson v. Seiter, 501 U.S. 294, 302 (1991).

LaFauci alleges that after being assaulted on February 14, 2008, he experienced soreness, chest pain, at least one minor cut, and significant bruising to his body and face.  LaFauci

complains that the prison nurse's failure to promptly attend to
his complaint of chest pain amounted to unconstitutionally
inadequate medical care.  As LaFauci asserts that no care at all
was provided or offered for his chest pain, his allegations
suffice to allege that the care he received was inadequate if, in
fact, care was required.  LaFauci must allege, however, that he
needed care for a serious medical need.  While LaFauci was badly
bruised, such an injury, without more, does not allege a "serious
medical need" for purposes of establishing an Eighth Amendment
violation of the right to adequate medical care in prison.  See
Gaudreault, 923 F.2d at 208 (finding that visible bruising and
abrasions, without more, do not constitute a "serious medical
need" for treatment requiring action on the part of jail
officials).  LaFauci alleges that he complained of chest pain but
indicates that the pain he experienced was attributable to the
visible bruises on his chest, and not to heart problems.  LaFauci
has not alleged that he suffers from, or has suffered from, any
heart problems or that any such problems were known to and
ignored by the prison medical staff.

Even if I were to find that LaFauci had alleged a serious
medical need requiring medical attention, LaFauci concedes that

he received medical attention when his pain interfered with his ability to lie down and sleep.  LaFauci was promptly brought to the hospital for care and treatment.  Hospital staff saw LaFauci and returned him to the prison without admitting him.  LaFauci does not claim that he suffered any harm other than bruising, or that he has any permanent or lasting effects from the injuries he received.  I find that LaFauci's allegations are insufficient to allege a serious medical need, and therefore do not state a claim for unconstitutionally inadequate medical care.  Accordingly, I recommend dismissal of that claim from this action.

VI.   Inadequate Law Library

LaFauci asserts generally that while he was at MSU in November 2007, he was not provided with access to a law library or to legal research materials.  Prisoners have a constitutional right of access to the courts that affords them access to the tools necessary to challenge their criminal cases, criminal convictions and sentences directly or collaterally, to file habeas petitions, or to challenge the conditions of their confinement through civil rights actions.  See Lewis v. Casey, 518 U.S. 343, 345 (1996).  In order to state a claim for denial of access to the courts under 42 U.S.C. § 1983, a prisoner must

demonstrate that the prison officials' actions "hindered his efforts to pursue a legal claim" that he is constitutionally entitled to pursue during his incarceration.  Id. at 351.  To effect his right to meaningful access to the courts during his incarceration, LaFauci is entitled to legal resources which, in the aggregate, enable him to litigate criminal and civil matters in the courts that he has a constitutional right to pursue.  See Bounds v. Smith, 430 U.S. 817, 832 (1977).

Here, LaFauci has not pointed to a single legal matter that he was involved in that was adversely affected by his lack of access to a law library or legal materials during his stay at MSU.  Absent an allegation that his efforts to pursue a legal claim were hindered, LaFauci cannot state a claim for a denial of adequate legal resources, an adequate law library, or meaningful access to the courts.  Accordingly, I recommend dismissal of this claim.

VII. Property Claim

LaFauci claims that items of his property, valued at $128, were improperly removed from his cell during a search and not returned to him.  Claims alleging the theft, damage, loss or other misappropriation of property are not actionable under 42

20

U.S.C. § 1983 where, as here, the state has an adequate post-deprivation remedy available.  See Hudson v. Palmer, 468 U.S. at 533; N.H. Rev. Stat. Ann. 541-B:9(II) & (IV), and 541-B:14 (1997) (providing a post-deprivation means of recouping property loss attributable the State).  Therefore, I recommend that LaFauci's property claim be dismissed from this action as it is not cognizable under § 1983.

VIII. Supervisory Liability

LaFauci has alleged that defendants William Wrenn, Commissioner of the New Hampshire Department of Corrections, Richard Gerry, Warden of the NHSP, and Greenwood are responsible for the taking of his property in their supervisory capacities. LaFauci claims that in grieving the July 2007 incident, he made each of these individuals aware of the violations alleged, and that they did nothing to remedy his complaints, although their positions as supervisors rendered them able to do so.  LaFauci specifically alleges that the supervisory defendants failed to protect his property rights by failing to remedy the harm caused by the allegedly improper taking of his property in July 2007.  I have found that LaFauci cannot state a § 1983 claim for the taking of his property.  Accordingly, I find that Wrenn, Gerry,

and Greenwood did not commit constitutional violations for
failing to remedy that taking, and I recommend that these
supervisory liability claims, and the defendants sued in their
supervisory capacities, be dismissed from this action.[5]

IX.   Official Capacity Claims

"Personal-capacity suits seek to impose personal liability
upon a government official for actions he takes under color of
state law.  Official-capacity suits, in contrast, 'generally
represent only another way of pleading an action against an
entity of which an officer is an agent.'" Kentucky v. Graham,
473 U.S. 159, 165-67 (1985) (citations omitted).  Section 1983
suits for damages against state officers in their official
capacities are barred by the Eleventh Amendment unless the state
has expressly waived immunity, which has not been done by New
Hampshire for actions brought under § 1983.  See P.R. Aqueduct &
Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993)
(absent waiver, neither a state nor agencies acting under its

---

[5]As previously stated, it is not clear from the complaint
what information was included in the grievances filed.  It is
equally unclear to whom each of those grievances were sent.  If
LaFauci intended any supervisory liability claims other than
those discussed herein regarding his property, he must file a
motion to amend his complaint indicating, with specificity, what
was contained in his grievance forms, and to whom they were sent,
that gives rise to supervisory liability of those individuals.

control may be subject to suit in federal court); <u>Negron-Almeda</u> <u>v. Santiago</u>, 579 F.3d 45, 52 (1st Cir. 2009) (citing <u>Wang v. N.H.</u> <u>Bd. of Reg. in Med.</u>, 55 F.3d 698, 700 (1st Cir. 1995)). Accordingly, I construe the claims as having been asserted against the defendants in their individual capacities, and recommend that all of the claims levied against the defendants in their official capacities be dismissed from this action.

X.    <u>Other Defendants</u>

LaFauci has named Jane Coplan, Warden of the MSU, MSU disciplinary officers Lt. Paul Bell, and Lt. John Morin as defendants to this action.  LaFauci has not alleged any facts in the narrative of his complaint that give rise to any claim against any of these defendants, and I therefore recommend they be dismissed from this action.

<u>Conclusion</u>

In an Order issued simultaneously with this Report and Recommendation, I direct that LaFauci's excessive force claims and state law assault claims be served on defendants Bashaw, Britton, Daniels, Jorgeson, Burrows, and Firillo.  For the foregoing reasons, I recommend dismissal of the remainder of the claims and defendants identified by LaFauci in his complaint.

23

Specifically, I recommend dismissal of the inadequate medical care, denial of access to the courts, property, supervisory liability, and official capacity claims, as well as defendants Wrenn, Gerry, Coplan, Greenwood, Bell, and Morin from this action.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauth. Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
Landya B. McCafferty
United States Magistrate Judge

Date:     June 21, 2010

cc:       Anthony LaFauci, pro se

LM:jba

24